### No. 2657.—MATILDA J. BOWIE *v.* SAMUEL M. DAVIS.

An act of donation *inter vivos* has no effect against third parties if it has not been registered in the proper book of donations kept in the parish where the property is situated. C. C. 1541, 1542, 1543, 1544, 1545.

In this case an imperfect donation was made in favor of Mrs. Bowie, a married woman: imperfect, because of the reservations by the donor in the act. Afterwards, and before the donation took effect, the donor and his wife, and the donee and her husband, made a notarial act, which was duly recorded, interpreting and construing the act of donation, declaring its meaning to be a sale of the property, and not a donation. Before, however, this act construing the donation was passed, the property was sold at marshal's sale by the creditors of the donor, and the husband of the donee became the purchaser. The husband of the donee having purchased the property described in the act at marshal's sale, executed a mortgage thereon for $70,000, and the wife (the donee) made a renunciation of her rights in the act: Held—That her joining her husband and the donor in an authentic act of interpretation of the meaning of the act of donation, which was placed of record, with her subsequent act of renunciation in the act of mortgage given by her husband, she was estopped and precluded from claiming the property under the donation, which had never been properly registered.

APPEAL from the Thirteenth District Court, parish of Tensas. *Hough,* J. *A. N. & H. N. Ogden* and *Mayo & Spencer,* for plaintiff and appellant. *Thomas P. Farrar,* for defendant and appellee.

LUDELING, C. J. This is a petitory action by a married woman, separated in property from her husband, to recover a tract of land situated in the parish of Tensas. She claims to be the owner of the property by virtue of an act of donation from her brother, John K. Ruth, made in June, 1850. The act recites "for and on account of the love and affection which he has and bears towards his sister, Mrs. Matilda J. Bowie and her children, and for diverse other good and sufficient reasons, he does give, grant, donate and transfer all and singular his right, title and interest in" the property. The act further recites that it is "expressly understood and agreed that the proceeds of the crops of said Franklin plantation are to be subject to John K. Ruth's disposition, until the full and final payment of the debt which is now due by said place to John Armfield, and that the said transfer shall not, in any manner, interfere with the mortgage now held by John Armfield."

The evidence shows that the plaintiff, who was then not separated in property from her husband, went with him to live on the plantation, and that out of the products thereof, Dr. Bowie, her husband, paid the debts due to Armfield. On the tenth of February, 1859, John K. Ruth and his wife, and Mrs. M. J. Bowie, assisted by her husband, in a notarial act, passed before A. Mazureau, a notary public, declared that John Armfield had purchased said plantation, at a marshal's sale, under an execution issued against John Ruth, the father of John K. Ruth and Matilda J. Bowie, and that he had transferred the property to John K. Ruth, under an agreement that he should transfer the property acquired by him at the marshal's sale to some one of the children of John Ruth, for the price by him bid for the property, and that the parties intending to substitute Matilda J. Bowie and her husband in the place of John K. Ruth, they erroneously called the transfer from John K. Ruth to Matilda J. Bowie a donation. That they all intended it to be a sale of the rights and interest of said John K. Ruth to said property to Mrs. M. J. Bowie and her husband, Allen B. Bowie, on their assumption of the debt due to Armfield; and that said Allen B. Bowie had discharged the debt; John Armfield also signed that act. It was duly recorded.

About seven months after this public declaration of the understanding and intention of the parties to the act of twentieth June, 1850, Allen B. Bowie borrowed $70,000 from Leveritch, and he executed a mortgage on the Franklin plantation (being the property mentioned in the transfers aforesaid), to secure the payment thereof. In this act of mortgage, Mrs. Bowie joined to renounce her mortgage on the property in favor of the mortgagee. On the seventeenth May, 1866, Mrs. Bowie sued her husband for a separation of property and for a dissolution of the community of acquets and gains, and she obtained a judgment against him on the following day for a large sum of money and for the Glen Allen plantation, her paraphernal property, etc.

Although the "Franklin plantation" was then in the possession of her husband, she did not claim it to belong to her.

In the meantime Stephen Duncan had acquired the mortgage notes of Allen B. Bowie, given for the money loaned by Leveritch, and he sued Allen B. Bowie. Judgment in his favor, making executory the mortgage on the Franklin plantation, was rendered on the twenty-fourth of November, 1866.

On the second of March, 1867, the Franklin plantation was sold under execution issued under the judgment in the suit of Duncan v. Bowie, to Samuel M. Davis for $34,524 90. On the thirty-first day of October, 1868, this suit was instituted.

We do not think the plaintiff has made out her case. She claims under the act of twentieth June, 1850, as a donation from her brother. As an act of donation it can have no effect against the defendant, as it

was never recorded in the book of donations, which is kept in the parish where the property is situated. Article 1544 C. C., and articles 1541, 1542, 1545. Acts of 1855, 335.

Besides, if she had had any title to the property, she would have been estopped from claiming the property of the purchaser by her acts above enumerated. Judice v. Kerr, 8 An. 465.

It is therefore ordered, adjudged and decreed that the judgment of the district court be affirmed, with costs of appeal.

Mr. Justice Wyly dissents.

Rehearing refused.